**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

AMBRIA CRAWFORD, DREW FERRARA and PHILLIP CURRY, *on behalf of themselves and all others similarly situated,*

Plaintiffs,

v.

PJ CHEESE, INC., PJ LOUISIANA, L.L.C., PJ UTAH, LLC, PJ CHIPPEWA, L.L.C., and OHIO PIZZA DELIVERY CO. d/b/a "Papa Johns,"

Defendants.

Case No. 4:25-cv-63-AWA-RJK

**JURY TRIAL DEMANDED**

**FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiffs Ambria Crawford, Drew Ferrara and Phillip Curry ("Plaintiffs"), on behalf of themselves and all others similarly situated, file this First Amended Collective and Class Action Complaint ("Complaint") against Defendants PJ Cheese, Inc., PJ Louisiana, L.L.C., PJ Utah, LLC, PJ Chippewa, L.L.C., and Ohio Pizza Delivery Co. (collectively "Defendants"). Plaintiffs complain and allege upon personal knowledge as to themselves and upon information and belief as to all other matters.

**INTRODUCTION**

1. This action seeks to redress Defendants' systematic policy and practice of paying their delivery drivers net hourly wages below the minimum wage in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and applicable state minimum wage laws.

2. Defendants and their commonly-owned affiliates together operate nearly 200 Papa Johns' Pizza franchise stores in Virginia, Alabama, Florida, Georgia, Louisiana, Mississippi, Ohio, Tennessee, Texas, and Utah. Defendants employ delivery drivers who drive their own automobiles

to deliver pizza and other food items to their customers' homes and workplaces. Instead of reimbursing their delivery drivers for the reasonably approximate costs of the business use of their vehicles, Defendants have used a flawed method to determine reimbursement rates that provides such an unreasonably low rate below any reasonable approximation of the expenses they incur that the drivers' unreimbursed expenses cause their wages to fall below the minimum wage.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the FLSA claim under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question jurisdiction).

4. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 (pendent claims jurisdiction).

5. Jurisdiction is also authorized pursuant to 28 U.S.C. § 1332(d), as minimal diversity exists. There are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

6. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants operate multiple Papa Johns' pizza stores in this District, Defendants maintain significant business contacts within this District, Defendants employed Plaintiffs Crawford and Ferrara in this District, and Defendants have engaged in the unlawful conduct alleged in this Complaint within this District.

## PARTIES

7. Defendant PJ Cheese, Inc. is an Alabama corporation which owns and operates Papa Johns' franchise stores around the mid-Atlantic region and other areas of the United States.

8. Defendant PJ Louisiana, L.L.C. is a Louisiana limited liability company which owns and operates Papa Johns' franchise stores in Louisiana.

9. Defendant PJ Utah, LLC is a Utah limited liability company which owns and operates Papa Johns' franchise stores in Utah.

10. Defendant PJ Chippewa, L.L.C. is a Louisiana limited liability company which owns and operates one or more Papa Johns' franchise stores in Louisiana.

11. Defendant Ohio Pizza Delivery Co. is an Ohio corporation which owns and operates Papa Johns' franchise stores in Ohio and other states.

12. Defendants form a single employer or single integrated enterprise as they share functional interrelation of operations, common management, centralized control of labor relations, and common ownership as shown by:

a. All the Defendants are owned by the same entity, PJ United, Inc.;

b. All the Defendants share the same board of directors and the same officers;

c. Ultimately, all of the Defendants are managed by Doug Stephens, Stephen Saunders and Bill Green;

d. Brad Leonard serves as Chief Financial Officer ("CFO") of all the Defendants;

e. Mr. Stephens, Mr. Saunders, Mr. Green and Mr. Leonard control all wages and reimbursements provided to all Defendants' employees;

f. Mr. Stephens, Mr. Saunders and Mr. Green have devised the vehicle reimbursement policy used by all Defendants;

g. Mr. Stephens has ultimately approved that reimbursement policy used by all Defendants;

h. Defendants jointly operate all of the Papa Johns' stores from their shared headquarters located at 2800 Resource Drive, Birmingham, Alabama,

35242;

i. All human resource functions are performed from Defendants' headquarters located at 2800 Resource Drive, Birmingham, Alabama, 35242;

j. All Defendants share the same human resources department and personnel; and

k. All Defendants share the same human resources policies, procedures and documents.

13. Alternatively and/or cumulatively, based on the same evidence, Defendants constitute joint employers as they co-determine matters governing essential terms and conditions of employment, share ability to hire, fire, and discipline employees, share ability to affect compensation and benefits, and share authority to direct and supervise employees' performance.

14. Plaintiff Drew Ferrara is a resident of Chesterfield, Virginia. He was employed by Defendants as a pizza delivery driver from about 2004 to April 2025 at Defendants' Papa Johns' franchise store located at 6633 Lake Harbour Drive, Midlothian, Virginia, 23112. Plaintiff Ferrara's claim was disclosed to Defendants on June 20, 2024. His claim was tolled from approximately June 20, 2024 by agreement of the parties and equitable tolling due to Defendants' misrepresentations and delay in producing necessary data, and his claim was tolled by an arbitration claim from December 3, 2024. During the parties' negotiations, Defendants repeatedly misrepresented that all delivery drivers they employ signed arbitration agreement. Plaintiff Drew Ferrara reasonably relied on Defendants' counsel's misrepresentation and submitted his arbitration demands with the AAA, in accordance with Defendants' arbitration program, among over 100

other delivery drivers who held similar claims.[1] Defendants have produced no arbitration agreement signed by Mr. Ferrara. Plaintiff Drew Ferrara's written consent to pursue FLSA claims is attached hereto as "Exhibit A."

15. Plaintiff Ambria Crawford is a resident of Hampton, Virginia. She was employed by Defendants as a pizza delivery driver from about July 2016 to August 2018 and again from about July 2019 to March 2021 at Defendants' Papa Johns' franchise store located at 231 East Mercury Boulevard, Hampton, Virginia, 23669. Plaintiff Ambria Crawford's claim was disclosed to Defendants on February 8, 2024. Her claim was tolled from approximately February 8, 2024 by agreement of the parties and equitable tolling due to Defendants' misrepresentations and delay in producing necessary data; and her claims were tolled by an arbitration from June 13, 2024 through June 10, 2025. During the parties' negotiation, Defendants repeatedly misrepresented that all delivery drivers they employ signed arbitration agreement. Plaintiff Ambria Crawford reasonably relied on Defendants' counsel's misrepresentation and submitted her arbitration demand with the AAA, in accordance with Defendants' arbitration program, among over 100 other delivery drivers who held similar claims. Defendants recently admitted that they have no

[1] The claims were filed with AAA based on Defendants' attorney's repeated representations over more than a decade that Defendants maintain arbitration agreements signed by all of their delivery drivers. Defendants have since admitted those prior statements are untrue by expressly admitting in writing that Defendants can produce no arbitration agreement signed by Ms. Crawford and Mr. Curry, and Defendants have produced no arbitration agreement with Mr. Ferrara and other claimants. Those misrepresentations, along with misrepresentations about settlement terms caused Plaintiffs' delay in bringing suit in court. Plaintiffs would have filed in court but for the parties' agreement to negotiate settlement prior to filling arbitration demands based on terms that Defendants misrepresented, and Defendants' repeated misrepresentation concerning the existence of arbitration agreements. Therefore, the doctrine of equitable estoppel precludes Defendants from raising a statute of limitations defense "when the defendant's own misrepresentations caused the plaintiff's delay in bringing suit." *Smith v. Atl. Commtech Corp.*, 2020 U.S. Dist. LEXIS 253874, at *13 (E.D. Va. Dec. 10, 2020) (citing *City of Bedford v. James Leffel & Co.*, 558 F.2d 216, 218 (4th Cir. 1977)).

arbitration agreement with Ms. Crawford. Plaintiff Ambria Crawford's written consent to pursue FLSA claims was previously filed with the Court.

16. Plaintiff Phillip Curry is a resident of West Lafayette, Ohio. He was employed by Defendants as a pizza delivery driver from approximately January 2016 to May 2019 and again from about June 2019 to May 2021 at Defendants' Papa Johns' franchise store located at 701 East Market Street, Akron, Ohio, 44305. Plaintiff Phillip Curry's claim was disclosed to Defendants on April 11, 2024. His claim was tolled by agreement of the parties from approximately April 11, 2024 by agreement of the parties and equitable tolling due to Defendants' misrepresentations and delay in producing necessary data, and his claims were tolled by an arbitration from July 4, 2024 through June 10, 2025. During the parties' negotiations, Defendants repeatedly misrepresented that all delivery drivers they employ signed arbitration agreement. Plaintiff Phillip Curry reasonably relied on Defendants' counsel's misrepresentation and submitted their arbitration demands with the AAA, in accordance with Defendants' arbitration program, among over 100 other delivery drivers who held similar claims. Defendants admitted that they have no arbitration agreement with Mr. Curry. Plaintiff Phillip Curry's written consent to pursue FLSA and Ohio claims was previously filed with the Court.

## Factual Allegations

***Defendants' Business***

17. Together, Defendants operate approximately nearly 200 Papa Johns' Pizza franchise stores in Virginia, Alabama, Florida, Georgia, Louisiana, Mississippi, Ohio, Tennessee, Texas, and Utah.

18. The primary function of Defendants' Papa Johns' stores is to sell pizza and other food items to customers, whether they carry out the food or have it delivered.

19. Defendants' Papa Johns' stores have employed delivery drivers, including Plaintiffs Ambria Crawford, Drew Ferrara and Phillip Curry, who all have the same primary job duty: to deliver pizzas and other food items to customers' homes or workplaces.

***Defendants' Flawed Reimbursement Policy***

20. Throughout the relevant period, Defendants required their delivery drivers to maintain and pay for a safe, legally-operable, and insured automobile when delivering pizza and other food items.

21. Throughout the relevant period, Defendants required their delivery drivers to bear the out-of-pocket costs associated with their vehicles, including costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses ("automobile expenses") while delivering pizzas for the primary benefit of Defendants. Defendants have neither tracked nor reimbursed their drivers' actual vehicle costs.

22. For example, from approximately 2021 to April 2025, Defendants reimbursed Mr. Ferrara at a rates ranging from $0.23 to $0.39 per mile tracked by Defendants' computer system, with an average reimbursement rate of approximately $0.316 per mile tracked by Defendants' computer system. Based on information and belief, Defendants' computer system has not tracked all of their drivers' mileage driven on the job, such as but not limited to failure to track return drives to delivery locations to correct orders and/or satisfy customers.

23. This method underestimated the automobile costs per mile incurred by Defendants' delivery drivers.

24. The net result of Defendants' delivery driver reimbursement policy is a reimbursement of much less than the reasonably approximate automobile expenses of their delivery drivers.

25. The Internal Revenue Service ("IRS") business mileage reimbursement rate has ranged between $0.56 and $0.70 per mile from 2021 to present. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the American Automobile Association ("AAA"), have determined that the composite average cost of owning and operating a vehicle ranged between $0.64 and $0.82 per mile for vehicles driven 15,000 miles per year between 2021 and present. These figures represent reasonable approximations of the average cost of owning and operating a vehicle for use in delivering pizzas.

26. The driving conditions associated with the pizza delivery business cause more frequent maintenance costs, higher costs due to repairs associated with delivery driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver. Plaintiffs and class members experienced lower gas mileage and higher repair costs than the average driver due to the nature of the delivery business, including frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressure.

27. Defendants' reimbursement policy did not reimburse their delivery drivers for even their ongoing out-of-pocket expenses, much less other costs they incurred to own and operate their vehicles, and thus Defendants uniformly failed to reimburse their delivery drivers at any reasonable approximation of the cost of owning and operating their vehicles for Defendants' benefit.

28. Defendants' systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to Defendants, such that the hourly wages they paid to Plaintiffs and class members were not paid free and clear of all outstanding obligations to Defendants.

29. Defendants have failed to reasonably approximate the amount of Plaintiffs' and class members' automobile expenses to an extent such that their net wages were diminished beneath the federal minimum wage.

30. In sum, Defendants' reimbursement policy and methodology fail to reflect the realities of delivery drivers' automobile expenses.

***Defendants' Failure to Reasonably Reimburse Automobile Expenses Causes Minimum Wage Violations***

31. Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of Plaintiffs' and class members' automobile expenses throughout the recovery period, causing systematic violations of the federal minimum wage.

32. During times relevant, Defendants nominally paid Mr. Ferrara the exact Virginia minimum wage rate of $9.50 per hour between May 2021 and December 2021, $11.00 per hour in 2022, $12.00 per hour in 2023 and 2024, and $12.41 per hour in 2025, including a tip credit applied to the time Mr. Ferrara spent performed deliveries, but prior to subtracting under-reimbursed vehicle costs.

33. The federal minimum wage has been $7.25 per hour since July 24, 2009.

34. Virginia's minimum wage rate was $9.50 per hour between May 2021 and December 2021, was $11.00 per hour in 2022, was $12.00 per hour in 2023 and 2024, and is $12.41 per hour in 2025.

35. The lowest IRS business mileage reimbursement rate during Mr. Ferrara's recovery period was $0.56 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. Using that IRS rate as a reasonable approximation of Mr. Ferrara's automobile expenses, every mile driven on the job decreased his net wages by approximately $0.244 per mile

($0.56 - $0.316 per mile = $0.244), not considering any unrecorded miles Mr. Ferrara drove to perform his job.

36. Mr. Ferrara estimates that he drove an average of approximately 12 miles per work hour.

37. Thus, using the lowest IRS rate during Mr. Ferrara's recovery period as a reasonable estimate of his actual expenses, Plaintiff consistently "kicked back" to Defendant approximately $2.93 per hour ($0.244 average per mile "kickback" x 12 average miles driven per work hour = $2.93 per hour "kickback"), resulting in subminimum average wage rates of approximately $6.57 per hour in 2021 ($9.50 per hour Virginia minimum wage - $2.93 per hour average "kickback" = $6.57 per hour net wage rate), approximately $8.07 per hour in 2022 ($11.00 per hour Virginia minimum wage - $2.93 per hour average "kickback" = $8.07 per hour net wage rate), approximately $9.07 per hour in 2023 and 2024 ($12.00 per hour Virginia minimum wage - $2.93 per hour average "kickback" = $9.07 per hour net wage rate), and $9.48 per hour in 2025 ($12.41 per hour Virginia minimum wage - $2.93 per hour average "kickback" = $9.48 per hour net wage rate).

38. Those calculations do not account for unreimbursed return deliveries to correct orders and/or satisfy customers.

39. That same basic math will be used to prove all opt-in Plaintiffs' claims.

40. All of Defendants' delivery drivers had similar experiences to those of Plaintiff Ferrara. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle expenses.

41. Because Defendants paid their delivery drivers a gross hourly wage exactly equal to, or at least very close to, the applicable minimum wage rate, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. Even if the reasonable reimbursement rate is found to be less than the IRS rate, proof of class-wide liability does not change.

42. While the amounts of Defendants' actual reimbursements per mile may vary over time, Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of their other Papa Johns' stores. Thus, although reimbursement amounts may differ somewhat by time or region, the amounts of under-reimbursements relative to automobile costs incurred are relatively consistent between time and region.

43. The net effect of these policies is that Defendants willfully failed to pay the federal and state minimum wage to their delivery drivers, including Plaintiffs and class members. Defendants thereby enjoyed ill-gained profits at the expense of their employees.

44. Yet, Defendants have continued to under-reimburse delivery drivers, thus willfully failing to pay them the federal and state minimum wage.

## FLSA COLLECTIVE ACTION ALLEGATIONS

45. Plaintiffs bring a collective action pursuant to 29 U.S.C. § 216(b) on behalf of a proposed collective defined to include all persons Defendants employed as delivery drivers during any workweek in the three-year maximum limitations period plus periods of tolling, but excluding delivery drivers currently pursuing arbitration claims against Defendants alleging minimum wage claims resulting from on under-reimbursed vehicle costs.

46. Plaintiffs reserve the right to modify the proposed collective definition at a later stage of litigation.

47. Plaintiffs are members of the proposed collective they seek to represent because they worked for Defendants as delivery drivers during the relevant period and suffered the minimum wage violations alleged above relating to delivery work.

48. This action may be properly maintained as a collective action on behalf of the putative Class because, during the relevant period:

a. Plaintiffs and the collective worked for the same employer;

b. Plaintiffs and the collective performed the same type of work;

c. Plaintiffs and the collective were paid similar wage rates;

d. Plaintiff and the collective experienced similar vehicle costs;

e. Plaintiffs and the collective were similarly reimbursed for vehicle costs incurred in performing their jobs; and

f. Plaintiffs and the collective were governed by the same payroll policies, practices and systems.

49. Plaintiffs estimate that the putative collective, including both current and former delivery drivers over the relevant period, will include thousands of members. The precise number of members should be readily available from Defendants' business records, and from input received from the delivery drivers as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b). Given the composition and size of the collective, its members may be informed of the pendency of this action directly via U.S. mail, e-mail and/or the posting of written notices at Defendants' stores.

## STATE LAW CLASS ACTION ALLEGATIONS

***The State Law Classes***

50. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Drew Ferrara brings Count II of this Complaint on behalf of himself and the following Class of similarly-situated individuals:

> All persons Defendants have employed in Virginia as delivery drivers during any workweek in the two-year limitations period plus period of tolling (the "Virginia Class").

51. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Phillip Curry brings Counts III of this Complaint on behalf of himself and the following Class of similarly-situated individuals:

> All persons Defendants have employed in Ohio as delivery drivers during any workweek in the three-year limitations period plus periods of tolling (the "Ohio Class")

Together, the Virginia Class and the Ohio Class are referred to as "the State Law Classes."

52. Each Class specifically excludes delivery drivers currently pursuing their own minimum wage claims based on under-reimbursed vehicle costs in arbitration; Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which any Defendant has or had a controlling interest, or which any Defendant otherwise controls or controlled; any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendants; and the Court and Court personnel.

53. The State Law Classes each satisfy the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

54. Each of the State Law Classes satisfies the numerosity standard because each of those classes consists of at least hundreds of persons who are geographically dispersed. Therefore, joinder of all members of each State Law Class in a single action is impracticable.

55. Questions of fact and law common to the State Law Classes predominate over any questions affecting only individual members. The questions of law and fact common to the State Law Classes arising from Defendants' actions include, without limitation:

a. Whether Defendants failed to pay net wages to members of the State Law Classes as required by applicable state minimum wage laws;

b. Whether Defendants failed to reasonably reimburse members of the State Law Classes for the cost of driving their own vehicles to deliver Defendants' pizzas and other food items; and

c. Whether Defendants' formula and/or methodology used to calculate the payment of reimbursement for vehicle expenses resulted in unreasonable under-reimbursement of the members of the State Law Classes.

56. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the State Law Class claims.

57. Plaintiffs' claims are typical of those of the State Law Classes in that:

a. Plaintiffs and the State Law Class members have worked as delivery drivers for Defendants delivering pizza and other food items to Defendants' customers;

b. Plaintiffs and the State Law Class members delivered pizza and food items

using automobiles not owned or maintained by Defendants;

c. Defendants required Plaintiffs and the State Law Classes to maintain their automobiles in a safe, legally-operable, and insured condition;

d. Plaintiffs and the State Law Classes incurred costs for automobile expenses while delivering pizzas and other food items for the primary benefit of Defendants;

e. Plaintiffs and the State Law Classes were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f. Plaintiffs and the State Law Classes were subject to the same pay policies and practices of Defendants;

g. Plaintiffs and the State Law Classes were subject to the same delivery driver reimbursement policy that underestimates automobile expenses per mile, and thereby systematically deprived them of reasonably approximate reimbursements, resulting in wages below the applicable state minimum wage in some or all workweeks;

h. Plaintiffs and the State Law Classes were reimbursed similar set amounts of automobile expenses per mile; and

i. Plaintiffs and the State Law Classes were paid exactly, or at least very close to, the applicable minimum wage prior to subtracting unreimbursed vehicle costs.

58. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the State Law Classes.

59. Plaintiffs are adequate representatives of the State Law Classes because they are members of the State Law Classes and their interests do not conflict with the interests of the State Law Class members they seek to represent. The interests of the State Law Class members will be fairly and adequately protected by Plaintiffs and the undersigned counsel, who possess extensive experience prosecuting complex wage and hour, employment, and class action litigation.

60. Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the State Law Classes have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the State Law Classes, and there are no material difficulties impairing the management of a class action.

61. It would be impracticable and undesirable for each Member of the State Law Classes who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all State Law Class members.

***The Multi-State Class***

62. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring Count IV of this Complaint (in the alternative) on behalf of themselves and as the Class Representatives of the following persons who were not paid minimum wages:

> All persons Defendants have employed in Virginia, Ohio, and Florida as delivery drivers during any workweek in the maximum limitations period (hereinafter the "Multi-State Class").

63. The minimum wage laws of Virginia, Ohio, and Florida are materially identical in that they require payment of at least minimum wage. See Virginia Minimum Wage Act, Va. Code Ann. § 40.1-28.8 et seq., Ohio Const. § 34a; O.R.C. § 4111, Florida Constitution, Art. X, Sec. 24.

64. The multi-state minimum wage claim, if certified for class-wide treatment, is brought on behalf of all similarly situated persons who do not opt-out of the Multi-State Class.

65. The Multi-State Class specifically excludes delivery drivers currently pursuing their own minimum wage claims based on under-reimbursed vehicle costs in arbitration; Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which any Defendant has or had a controlling interest, or which any Defendant otherwise controls or controlled; any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendants; and the Court and Court personnel.

66. The Multi-State Class satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

67. The Multi-State Class satisfies the numerosity standard because the class consists of at least hundreds of persons who are geographically dispersed. Therefore, joinder of all members of the Multi-State Class in a single action is impracticable.

68. Questions of fact and law common to the Multi-State Class predominate over any questions affecting only individual members. The questions of law and fact common to the Multi-State Class arising from Defendants' actions include, without limitation:

a. Whether Defendants failed to pay net wages to members of the Multi-State Class as required by applicable state minimum wage laws;

b. Whether Defendants failed to reasonably reimburse members of the Multi-State Class for the cost of driving their own vehicles to deliver Defendants' pizzas and other food items; and

c. Whether Defendants' formula and/or methodology used to calculate the payment of reimbursement for vehicle expenses resulted in unreasonable under-reimbursement of the members of the Multi-State Class.

69. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the Multi-State Class claims.

70. Plaintiffs' claims are typical of those of the Multi-State Class in that:

a. Plaintiffs and the Multi-State Class members have worked as delivery drivers for Defendants delivering pizza and other food items to Defendants' customers;

b. Plaintiffs and the Multi-State Class members delivered pizza and food items using automobiles not owned or maintained by Defendants;

c. Defendants required Plaintiffs and the Multi-State Class to maintain their automobiles in a safe, legally-operable, and insured condition;

d. Plaintiffs and the Multi-State Class incurred costs for automobile expenses while delivering pizzas and other food items for the primary benefit of Defendants;

e. Plaintiffs and the Multi-State Class were subject to similar driving conditions, automobile expenses, delivery distances, and delivery

frequencies;

f. Plaintiffs and the Multi-State Class were subject to the same pay policies and practices of Defendants;

g. Plaintiffs and the Multi-State Class were subject to the same delivery driver reimbursement policy that underestimates automobile expenses per mile, and thereby systematically deprived them of reasonably approximate reimbursements, resulting in wages below the applicable state minimum wage in some or all workweeks;

h. Plaintiffs and the Multi-State Class were reimbursed similar set amounts of automobile expenses per mile; and

i. Plaintiffs and the Multi-State Class were paid exactly, or at least very close to, the applicable minimum wage prior to subtracting unreimbursed vehicle costs.

71. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the Multi-State Class.

72. Plaintiffs are adequate representatives of the State Law Classes because they are members of the Multi-State Class and their interests do not conflict with the interests of the Multi-State Class members they seek to represent. The interests of the Multi-State Class members will be fairly and adequately protected by Plaintiffs and the undersigned counsel, who possess extensive experience prosecuting complex wage and hour, employment, and class action litigation.

73. Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Multi-State Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Multi-State Class, and there are no material difficulties impairing the management of a class action.

74. It would be impracticable and undesirable for each Member of the Multi-State Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Multi-State Class members.

## CAUSES OF ACTION

### COUNT I: Violation of the Fair Labor Standards Act

75. Plaintiffs reassert and re-allege the allegations set forth above as if restated herein.

76. At all relevant times herein, Plaintiffs and Defendants' other delivery drivers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

77. The FLSA regulates, among other things, the payment of the minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a).

78. Defendants are subject to the FLSA's minimum wage requirements because they, individually and collectively, comprise an enterprise engaged in interstate commerce, and their

employees are engaged in such commerce.

79. Plaintiffs and Defendants' other delivery drivers are "employees" within the scope and meaning of 29 U.S.C. § 203(e).

80. Defendants are "employers" within the scope and meaning of 29 U.S.C. § 203(d).

81. Pursuant to Section 6 of the FLSA, codified at 29 U.S.C. § 206, Plaintiffs and Defendants' other delivery drivers have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

82. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations, but none of the FLSA exemptions apply to Plaintiffs or Defendants' other delivery drivers.

83. As alleged herein, Defendants reimbursed Plaintiffs and their other delivery drivers less than the reasonably approximate amount of their automobile expenses to such an extent that Defendants diminished their wages below the federal minimum wage.

84. Defendants' conduct was willful as they knew or should have known that their pay and reimbursement policies, practices, and methodologies result in failure to compensate delivery drivers, including Plaintiffs, at the federal minimum wage.

85. Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay the federal minimum wage to Plaintiffs and their other delivery drivers.

86. Plaintiffs and Defendants' other delivery drivers are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date of this filing, because Defendants acted willfully and knew, or showed reckless disregard for whether, their conduct was unlawful.

87. Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and Defendants' other delivery drivers are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b).

88. As a result of the willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiffs and Defendants' other delivery drivers. Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorney's fees, and costs of this action.

WHEREFORE, on Count I of this Complaint, Plaintiffs and all similarly situated delivery drivers demand judgment against Defendants and request: (1) compensatory damages; (2) liquidated damages; (3) attorney's fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

**COUNT II: Violation of Virginia Minimum Wage Act,**
**Va. Code Ann. § 40.1-28.8 et seq.**
**(On Behalf Of The Virginia Class)**

89. Plaintiff Drew Ferrara restates and incorporates the foregoing allegations as if fully restated herein.

90. At all relevant times herein, the Virginia Class has been entitled to the rights, protections, and benefits provided by the VMWA. Va. Code Ann. § 40.1-28.8 *et seq*.

91. During all times relevant to this action, Defendants were the "employers" of the Virginia Class members within the scope and meaning of the VMWA. Va. Code Ann. § 40.1-28.9(A).

92. During all times relevant to this action, the Virginia Class members were Defendants' "employees" within the meaning of the VMWA. *Id*.

93. The VMWA required that "employers" pay their "employees" at least $7.25 per hour prior to May 1, 2021; $9.50 per hour from May 1, 2021 to January 1, 2022; $11.00 per hour in 2022; $12.00 per hour in 2023 and 2024; and $12.41 per hour in 2025. Va. Code Ann. § 40.1-28.10(A)(1).

94. As alleged herein, Defendants have failed to pay the Virginia Class the minimum wage compensation required by the VMWA after deduction of unreimbursed vehicle expenses incurred in performing their jobs for Defendants.

95. Defendants, pursuant to their policy and practice, violated the VMWA by refusing and failing to pay the Virginia Class minimum wage.

96. The Virginia Class is entitled to damages equal to the minimum wage and overtime compensation rate minus actual wages received after deducting reasonably approximated automobile expenses within the two years preceding the filing of this claim plus periods of tolling. Va. Code Ann. § 40.1-28.12.

97. The Virginia Class is further entitled to an award of compensatory damages plus interest at eight per centum (8%) per annum upon such unpaid wages as may be due, said interest to be awarded from the date or dates said wages were due. *Id*.

98. The Virginia Class is further entitled to recover its attorney's fees and costs. Id.

WHEREFORE, on Count II of this Complaint, the Virginia Class demands judgment against Defendants and prays for: (1) compensatory damages; (2) interest at eight per centum (8%) per annum upon such unpaid wages as may be due; (3) attorneys' fees and costs as allowed by Va. Code Ann. § 40.1-28.12; (4) pre-judgment and post-judgment interest as provided by law; and (5)

such other relief as the Court deems fair and equitable.

**COUNT III: Violation of Ohio Const. § 34a and the OMWL**
**(On Behalf Of The Ohio Class)**

99. Plaintiff Phillip Curry reasserts and re-alleges the allegations above as if fully restated herein.

100. At all relevant times herein, Plaintiff Curry and the Ohio Class members have been entitled to the rights, protections, and benefits provided under the minimum wage provisions of the Ohio Constitution. Ohio Const. § 34a; O.R.C. § 4111.02.

101. The Ohio Constitution and the OMWL require that employees be paid not less than minimum wages as determined by an inflation index for all hours worked. That minimum wage rate was $8.80 per hour in 2021, $9.30 per hour in 2022, $10.10 per hour in 2023, $10.45 per hour in 2024, and is $10.70 per hour in 2025. *Id.*

102. Plaintiff Curry and the Ohio Class members are "employees" within the scope and meaning of the Ohio Constitution and the OMWL. Ohio Const. § 34a; O.R.C. § 4111.02.

103. Defendants are "employers" within the scope and meaning of the Ohio Constitution and the OMWL. *Id.*

104. The Ohio Constitution and the OWHL exempt certain categories of employees from Ohio's minimum wage obligations, but none of those exemptions apply to Plaintiffs and the Ohio Class members. Ohio Const. § 34a; O.R.C. §§ 4111.02 & 4111.14(B).

105. As alleged herein, Defendants have failed to pay Plaintiff Curry and the Ohio Class members the minimum wage required by Ohio Const. § 34a and the OWHL after deduction of unreimbursed vehicle expenses incurred in performing their jobs for Defendants. Ohio Const. § 34a; O.R.C. § 4111.02.

106. Defendants, pursuant to their policy and practice, violated the Ohio Constitution and the OWHL by refusing and failing to pay Ohio's minimum wage to their delivery drivers, including Plaintiff Curry and the Ohio Class members. *Id.*

107. Plaintiff Curry and the Ohio Class members are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years of the filing of this litigation plus periods of tolling. Ohio Const. § 34a; O.R.C. § 4111.14(k).

108. Plaintiff Curry and the Ohio Class members are further entitled to recover two times the amount of back wages due. *Id.*

109. Plaintiff Curry and the Ohio Class members are further entitled to recover their reasonable attorneys' fees and costs. *Id.*

110. Plaintiff Curry and the Ohio Class members are further entitled to pre-judgment and post-judgment interest as provided by law.

WHEREFORE, on Count III of this Complaint, Plaintiff Curry and all similarly situated delivery drivers demand judgment against Defendants and request: (1) compensatory damages; (2) liquidated damages; (3) attorney's fees and costs as allowed by Ohio Const. § 34a; O.R.C. § 4111.14(k); (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

**COUNT IV: Violation of Materially Identical State Minimum Wage Laws**
**(On Behalf Of The Multi-State Class)**

111. Plaintiffs reassert and re-allege the allegations set forth above as if restated herein.

112. Plaintiffs bring this cause of action in the alternative of Counts II to III.

113. Pursuant to the materially identical minimum wage laws of Virginia, Ohio, and Florida, employees are entitled to be compensated at a specified minimum rate of hourly pay.

114. By failing to adequately reimburse Plaintiffs and members of the Multi-State Class for the vehicle-related expense they incurred performing deliveries for Defendants, Defendants drove Plaintiffs' and members of the Multi-State Class's wages below the applicable minimums provided for under the materially identical state minimum wage laws.

115. Defendants violated at least the following materially identical statutes by failing to pay minimum wages as required:

- The Virginia Minimum Wage Act ("VMWA"), Va. Code. Ann. § 40.1-28.10 *et seq.*;
- Ohio Const. § 34a and the Ohio Minimum Wage Law ("OMWL"), O.R.C. § 4111;
- Florida Constitution, Art. X, Sec. 24.

116. At all relevant times, Plaintiffs and members of the Multi-State Class are victims of a uniform compensation policy as the same unlawful compensation policy has been applied to all Defendants' delivery drivers in Virginia, Ohio, and Florida.

117. No exemptions provided for in any of the materially identical minimum wage statutes apply to Plaintiffs or members of the Multi-State Class.

118. Plaintiffs and members of the Multi-State Class are entitled to damages equal to the difference between the compensation received and the applicable mandated state minimum wages during the applicable recovery periods plus all other remedies provided under applicable state law.

WHEREFORE, Plaintiffs and all similarly situated Delivery Drivers demand judgment against Defendants and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs; (4) pre-judgment and post-judgment interest as provided by law; (5) other remedies provided under state law; and (6) such other relief as the Court deems fair and equitable.

**JURY DEMAND**

Plaintiffs hereby demand a jury trial on all issues herein triable to a jury.

Dated: August 20, 2025

Respectfully submitted,

*/s/ Reid Coploff*
Reid Coploff
**MCGILLIVARY STEELE ELKIN LLP**
1101 Vermont Ave NW, Suite 1000
Washington, DC 20005
Telephone: (202) 833-8855
Email: trc@mselaborlaw.com
Jeremiah Frei-Pearson
(*pro hac vice* application forthcoming)
**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Tel.: (914) 298-3281
jfrei-pearson@fbfglaw.com

Mark A. Potashnick
(*pro hac vice* application forthcoming)
**WEINHAUS & POTASHNICK**
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Tel.: (314) 997-9150 ext. 2
markp@wp-attorneys.com

*Attorneys For Plaintiffs and the Putative Collective and Class Members*

**CERTIFICATE OF SERVICE**

The undersigned certifies that true and correct copies of the foregoing were served on Defendants' attorneys of record on this 20th day of August, 2025 via the Court's electronic case filing system.

*/s/ Reid Coploff*

# EXHIBIT A

**CONSENT TO BECOME A PARTY PLAINTIFF**

Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b)

I hereby consent to be a party plaintiff seeking unpaid wages against PJ Cheese, Inc., PJ Louisiana, Inc., PJ Utah, LLC and/or Ohio Pizza Delivery Co.

Date: 06 / 19 / 2024

Signature